NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LANCE MCDERMOTT,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2017-1258

---

Petition for review of the Merit Systems Protection Board in Nos. SF-3330-15-0432-I-1, SF-3330-15-0432-I-2.

---

Decided: June 13, 2017

---

LANCE MCDERMOTT, Seattle, WA, pro se.

JESSICA TOPLIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before NEWMAN, DYK, and STOLL, *Circuit Judges.*

PER CURIAM.

Petitioner Lance McDermott appeals the decision of the Merit Systems Protection Board denying Mr. McDermott's request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4333 (2012) ("USERRA"). Mr. McDermott requested corrective action to challenge the decision by the United States Postal Service ("USPS") to place Mr. McDermott on enforced leave. We affirm the Board's decision.

BACKGROUND

Mr. McDermott was a maintenance mechanic at the Seattle Priority Mail Annex. His position involves "trouble-shooting and complex maintenance work throughout the system of mail processing equipment," and performing "preventative maintenance inspections of mail processing equipment, building and building equipment." *McDermott v. U.S. Postal Serv.*, SF-0752-13-0633-I-1, 2015 WL 1976017 (M.S.P.B. Apr. 28, 2015) ("*McDermott I*"). The position is technically and physically demanding, and requires the "ability to distinguish colors." *McDermott v. U.S. Postal Serv.*, SF-3330-15-0432-I-2, 2016 WL 5369335, ¶ 2 (M.S.P.B. Sept. 23, 2016) ("*McDermott II*").

After his employer instituted a color-coded system to track maintenance operations, Mr. McDermott disclosed that he was colorblind. Even though the use of the color-coded system ceased due to Mr. McDermott's objections, Mr. McDermott's superiors expressed concerns as to whether Mr. McDermott could safely perform his job, which included working with colored electric wiring for buildings and machinery. Thus, USPS attempted to engage Mr. McDermott in an established reasonable accommodation and light duty process to address the issue. Mr. McDermott, however, did not respond to these attempts. Mr. McDermott reportedly stated that he did not want to participate in the reasonable accommodation

process or go on light duty because of his belief that another employee was fired on light duty. Thereafter, USPS referred Mr. McDermott to the District Reasonable Accommodation Committee ("DRAC") for assessment.

After not hearing from Mr. McDermott, he was hand-delivered a letter from his supervisor concerning his colorblindness. The letter formally offered Mr. McDermott the opportunity to request a Permanent Light Duty Assignment and discuss his "permanent restriction as it related to the essential functions of [Mr. McDermott's] position, and possible accommodations" with DRAC. *McDermott I*, 2015 WL 1976017. The letter requested a response, and informed Mr. McDermott that, while requesting either light duty or a reasonable accommodation was voluntary, "absent participation in [one] or the other process, management is unable to conclude that [Mr. McDermott] can perform the essential functions of [his] position with or without reasonable accommodation," and that "refusal to take advantage of either avenue may result in [Mr. McDermott's] placement in an enforced leave status." *Id.* Mr. McDermott did not contact his supervisor to discuss the matter.

A month later, Mr. McDermott was sent another letter regarding the reasonable accommodation and light duty process. The letter informed Mr. McDermott that he was prohibited from performing his work because his continued work, considering his colorblindness, "can result not only in damage to the equipment but also pose a significant safety risk." *Id.* The letter once again extended Mr. McDermott the option to request light duty and/or reasonable accommodation. The letter also noticed Mr. McDermott that he was to be placed on enforced leave "effective no sooner than ten (10) days from [his] receipt of this letter." S.A. 23.

After receiving no response from Mr. McDermott, USPS sent him another letter notifying him of his official

placement on enforced leave. The letter explained that his placement on enforced leave was "a direct result" of his "refusal to interact with management on this very important issue." *McDermott I*, 2015 WL 1976017. The letter also explained that Mr. McDermott continued to "have the right to request reasonable accommodation and/or light duty" but that he "must avail [himself] of these options which includes a willingness to sit down and discuss [his] medical limitations, if any, and the impact of [his] medical limitations on the performance of the essential functions of [his] job." *Id.* Mr. McDermott's enforced leave was implemented on the same day.

Mr. McDermott filed multiple complaints concerning his enforced leave in the United States District Court for the Western District of Washington. *See, e.g.*, *McDermott v. U.S. Postal Serv.*, No. C16-0377-JCC, 2016 WL 3364892, at *1 (W.D. Wash. June 17, 2016). Relevant to this appeal, Mr. McDermott first challenged his placement on enforced leave before the Board in 2015, in *McDermott I*. While that appeal was pending, Mr. McDermott filed the instant action before the Board.

During the litigation of *McDermott I*, the parties discovered that Mr. McDermott's classification as a preference-eligible veteran was removed from his file due to an internal USPS error. Upon this discovery, USPS corrected the error in Mr. McDermott's employment record, and also initiated a process to review other USPS employee records to correct any other preference-eligible status errors. The Administrative Judge determined, based on the record and witness testimony, that the misclassification of Mr. McDermott's veteran status was an inadvertent error by the responsible human resource specialist at USPS, not part of an effort to "deprive [Mr. McDermott] of his preference eligible status because of his prior military service." S.A. 28.

After holding a consolidated hearing to address the issues in *McDermott I* and the current action, the AJ issued a decision in *McDermott I* confirming USPS's action to place Mr. McDermott on enforced leave, which ultimately became the final decision of the Board. In this action, the AJ granted Mr. McDermott's motion to terminate his claim under the Veterans Employment Opportunities Act of 1998 (VEOA) because Mr. McDermott elected to pursue the matter in district court. *McDermott II*, 2016 WL 5369335, at ¶ 6.

As for the remaining USERRA claim in this action, the AJ rejected Mr. McDermott's allegations that the USPS violated USERRA when it: (1) failed to recognize his veteran's preference status; and (2) placed him in enforced leave status. *Id.* at ¶ 1. The Board affirmed the AJ's denial of Mr. McDermott's request for corrective action. *Id.* We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm a Board decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012). "A decision is supported by substantial evidence when 'a reasonable mind might accept [it] as adequate to support a conclusion.'" *Jacobsen v. Dep't of Justice*, 500 F.3d 1376, 1379 (Fed. Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)).

The scope of our review is also limited to the issues properly before us. Thus, we cannot address those arguments in Mr. McDermott's appeal that implicate *McDer-*

*mott I*.[1]   For example, we cannot consider Mr. McDer-mott's arguments that address the merits and appropri-ateness of being placed on enforced leave, including evidentiary issues such as Mr. McDermott's claim that he was denied his "only witness who worked in the same facility," Pet'r's Br. at 2; Mr. McDermott's claim that USPS used "false information" to remove his preference status, *see* Pet'r's Br. at 7–9; Mr. McDermott's claim that he was "denied any discovery and a number of exhibits" in *McDermott I* that could have assisted him in *McDermott II*, Pet'r's Br. at 2, 8, 18, as well as his whistleblower and retaliation claims, which were adjudicated in *McDermott I*. *See* Pet'r's Br. at 3–4, 10–11, 13, Pet'r's Resp. 1–6.

We also cannot address any arguments presented by Mr. McDermott that fall outside the scope of this appeal in *McDermott II*, including those addressing the contents of Office of Personnel Management records, *see* Pet'r's Br. at 6, and on issues concerning his VEOA claims, *see* Pet'r's Br. at 9.  Accordingly, this appeal is limited to Mr. McDermott's arguments pertaining to the USERRA claims in *McDermott II*.

USERRA prohibits discrimination in employment on the basis of military service.  The operative provision, 38 U.S.C. § 4311, states in pertinent part as follows:

(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied ini-tial employment, reemployment, retention in employment, promotion, or any benefit of em-ployment by an employer on the basis of that

---

[1]   On his petition for review form, Mr. McDermott requested review of only *McDermott II*.  He did not re-quest review of *McDermott I*.

membership, application for membership, performance of service, application for service, or obligation.

. . . .

(c) An employer shall be considered to have engaged in actions prohibited—

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

Thus, USERRA was enacted to protect an employee against discrimination in which the employee's military service is a "motivating factor" in the discriminatory action. *See id.* We explained that an employee making a USERRA claim of discrimination must "bear the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (citations omitted). Here, the Board affirmed the AJ's determination that Mr. McDermott did not meet his initial burden. *McDermott II*, 2016 WL 5369335, at ¶ 14.

On appeal, Mr. McDermott argues that the Board erred in determining that his preference status clerical error was not motivated by his military service. The Board determined that the record does not support Mr. McDermott's claim that the error was intentional and motivated by his military service. We find that that the Board's determination is supported by substantial evidence. Specifically, after considering "all the evidence of

record, including the hearing testimony," the AJ determined that the error resulted from the human resource specialist's inadvertent failure to "report [Mr. McDermott's] Desert Storm military service," and that there was "no evidence that the reviewing HR Specialist was aware of [Mr. McDermott's] 1990-91 military service and chose to ignore it, or that she was motivated to deprive him of his preference eligible status because of his prior military service." S.A. 28. The AJ found "no evidence that the 2006 modification was anything other than a clerical error." *McDermott II*, 2016 WL 5369335, at ¶ 12. And as the Board noted in affirming the AJ's determinations, "there was no evidence the Human Resources Specialist responsible for the error was aware of [Mr. McDermott's] qualifying military service, nor was there any evidence that anyone in [Mr. McDermott's] chain of command had anything to do with reviewing or denying his eligibility for preference-eligible status." *Id.* Nor does Mr. McDermott offer any such evidence here.

Mr. McDermott also appears to assert that the Board erred in its determination that his placement on enforced leave was not motivated by his military service. The Board had found that the record does not support Mr. McDermott's claim. *Id.* at ¶ 13. The Board explained that the AJ "determined that the [USPS] referred [Mr. McDermott] to the District Reasonable Accommodation Committee (DRAC) and later took the enforced leave action, not because of his military service, but because of his failure to cooperate with [USPS] efforts to address his colorblindness and ability to perform his duties." *Id.*

We find that the Board's determination is supported by substantial evidence. The record reflects that Mr. McDermott was placed on enforced leave after he failed to respond to repeated requests by the USPS to pursue a light duty assignment or other reasonable accommodations that might mitigate the legitimate safety risks that could result from his colorblindness. Nothing in the

record suggests that Mr. McDermott's military service was a motivating factor in any of USPS's actions to place Mr. McDermott on enforced leave. Nor has Mr. McDermott directed us to any evidence to the contrary.

The mere fact that USPS management knew of Mr. McDermott's prior military service does not change this. Here, the AJ weighed the knowledge of Mr. McDermott's prior military service with all other evidence on the record, and after considering the relevant *Sheehan* factors that help determine whether a discriminatory motivation may be reasonably inferred in any given USERRA challenge, determined that the USPS's knowledge of Mr. McDermott's prior military service created no inference of discriminatory motivation.[2] *Id.* at ¶ 14. We agree. We find nothing in the record to suggest that USPS's knowledge of Mr. McDermott's prior military service was a motivating factor in its actions.

Mr. McDermott also appears to assert an ineffective assistance of counsel claim against the USPS's counsel. Mr. McDermott claims that USPS's counsel failed to properly investigate the facts and "engag[ed] in conduct involving dishonesty, fraud, deceit, misrepresentation" and "conduct that is prejudicial to the administration of justice." Pet'r's Br. at 1. However, as USPS pointed out, its counsel did not represent Mr. McDermott in his pro-

---

[2] The *Sheehan* factors include "proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan*, 240 F.3d at 1014.

ceedings before the Board. And in any event, we do not find sufficient evidence to support this claim.

CONCLUSION

We have considered Mr. McDermott's remaining arguments and find them unconvincing. For the reasons stated above, we affirm the Board's decision. All pending motions, including Mr. McDermott's motion for appointment of counsel, are denied as moot.

**AFFIRMED**

COSTS

No costs.